## CLAGETT v. UNITED STATES.

(Court of Appeals of District of Columbia. Submitted February 5, 1923.
Decided May 7, 1923.)

No. 3879.

1. False pretenses ⬅6—Testimony that worthless check was intended only as security for loan shows no defense.

    In a prosecution for obtaining money by false pretenses, consisting of a worthless check, testimony by defendant that he gave the check only as security for a loan made him at the time the check was given, and that the payee agreed to hold the check for three days, without testimony that the payee knew there were no funds to meet the check establishes no defense, but itself affirmatively shows defendant's guilt.

2. False pretenses ⬅22—Subsequent repayment of amount of worthless check is no defense.

    The subsequent repayment of the amount of a worthless check is no defense to a prosecution for obtaining money on false pretenses by means of the check.

3. False pretenses ⬅22—Intention to repay money at time it is obtained is no defense.

    An intention by the party obtaining money by means of a worthless check, entertained at the time of obtaining the money, to repay it to the person from whom he obtained it, does not disprove his fraudulent intent, which is his intent to induce another to·part with the money by the false pretense, when he otherwise would not have done so, and is no defense to a prosecution.

Appeal from the Supreme Court of the District of Columbia.

Reverdy J. Clagett was convicted of obtaining money by false pretenses, and he appeals. Affirmed.

S. McC. Hawken and G. F. Havell, both of Washington, D. C., for appellant.

Peyton Gordon and James J. O'Leary, both of Washington, D. C., for the United States.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and MARTIN, Judge of the United States Court of Customs Appeals.

MARTIN, Acting Associate Justice. Appeal from the Supreme Court of the District of Columbia. The appellant, as defendant, was tried and convicted upon a charge of obtaining money under false pretenses, and was sentenced to serve a year in jail.

At the trial the prosecuting witness, Fant, testified in effect that on November 24, 1919, the defendant came to his place of business in the city of Washington, and asked him to cash a check which the defendant then exhibited to him; that the check was drawn upon a Marlboro bank in the sum of $75, dated as of that day, with the name of the witness written in it as payee; that the witness, after some excuses, finally gave the defendant the sum of $75, and received the check in return; that witness thereupon deposited the check in a local bank, but it was returned unpaid for want of funds. The witness said, while

still testifying in chief, "that the defendant had swindled him out of the money and had not paid one cent of it back." No objection was made by either side to that testimony.

Upon cross-examination the prosecuting witness denied that he had taken the check as security for a loan of $75, with the understanding that the check was not to be deposited in bank for three days, and that in violation of the agreement he had put the check in bank before the expiration of that period. The witness likewise denied that the defendant had called at his place of business three days after the date of the transaction for the purpose of taking up the check.

It was shown by the testimony of the cashier of the Marlboro bank that the defendant had had an account at that bank four or five years previous to the date of this transaction, but that he had no money in the bank at the date of the check or since. That statement was not denied by the defendant. The record discloses that the following took place during the cross-examination of the prosecuting witness by the defendant's counsel, to wit:

"Q. You stated, in answer to Mr. Emerson's question, that he did not pay a cent of that money back? A. Not one penny.

"Mr. Hawken: Now, under cross-examination I have a right to show that he did pay it back.

"The Court: I think not. If you had made a motion to strike that out. I would have granted it, because it is incompetent and irrelevant, because it has nothing to do with the case. I will strike it out now. The witness' testimony that no part of this money was paid back by the defendant, is stricken out.

"Mr. Hawken: And may I take an exception?

"The Court: If the check went through the bank, I take it there is no dispute it was sent to the bank.

"Mr. Hawken: There is no question about that. The check shows for itself.

"Exception noted. Whereupon the defendant offered to prove that on the 15th day of January, 1920, $40 was paid on account of the check to Mr. Fant, and that on different occasions between that and October 15, 1920, the sum of $67.18 was paid to Mr. Fant, leaving a balance of $10, which defendant placed to Mr. Fant's credit in bank on said date, making a total of $77.18, and exhibited and made a part of his offer of proof the deposit slip for $10 to Mr. Fant's credit, which deposit slip was made out in the handwriting of the defendant and deposited in the District National Bank, which offer was rejected by the court, and to which rejection the defendant noted an exception."

The defendant became a witness in his own behalf, and testified in substance that he was a cigar salesman; that he began to sell cigars to Fant early in September, and after that time he called there two or three times every week; that on November 24th he sold Fant some goods, but defendant did not handle the kind of goods which Fant wanted; that defendant told Fant that he was short of money, and asked him "if he wanted to help fix it up for him"; that Fant also complained of being hard up, but said he had some demand for those goods, and finally gave the defendant $75 and received the check, "and he was to hold the check until Saturday," and defendant "was to take the check up on Saturday; the specific understanding being that he was to hold the check for three days." The defendant further testified that on Saturday he went to Fant's store to take up the check, and was

then told by Fant that unexpected demands had come in against him, and that he had deposited the check in a local bank; that the defendant then said to Fant, "You were to hold that check, and I am here to pay it," and Fant answered that he was sorry, but he had been compelled to use the money, and had deposited the check in the District National Bank; that defendant told Fant he did not have an account in that bank, and said he would go to Marlboro to take up the check; that he went at once, but found that the check had gone to the Baltimore clearing house; that the defendant then applied to the District National Bank, where the check had been deposited, but it was not there; that he then saw Fant about the matter and Fant promised to get the check back. The record shows that the following then occurred:

"Thereupon the witness offered to prove that he had paid the amount of the check in full, after November 24, 1919, together with the costs of protest, which offer the court rejected, and an exception was noted. Whereupon the following occurred:

"Q. And after you and Mr. Fant made a search for the check, you say to give it back to you, about when was that? A. That was along in January.

"Q. In 1920? A. In 1920.

"Q. And from January, 1920, up until—just a moment, if your honor please—from that time on until the indictment in this case was returned on January 18, 1922, did you hear from Mr. Fant about this? A. Not a thing.

"Mr. Emerson: I object.

"The Court: The objection is sustained.

"Mr. Hawken: My object in that, if your honor please, is that it bears on the testimony and corroborates the testimony of the defendant that this check was to have been held for security, and then that, when this matter was completed, and the search for the check had been made to be turned back to him—it was the understanding and agreement—that they waited for more than two years before they took some action in the premises. * * *

"Mr. Hawken: An exception.

"The Court: Yes."

The defendant, as appellant, assigns as error the foregoing ruling of the court refusing him permission to testify concerning the payment of the amount of the check to Fant. He contends that the testimony was admissible, first, because of Fant's statement, made when testifying in chief, that the witness had not paid him back the money; and, second, because the repayment of the money to Fant without complaint upon his part tended to support the defendant's claim that the transaction was a loan, and that the check was accepted by Fant as security only, and that accordingly there was no false pretense or deception in the transaction.

The appellant also complains of the rulings of the trial court: (a) Excluding testimony offered by him to show that for a period of nine months following the transaction in question the appellant and the complaining witness continued to have amicable business transactions with one another on an average of twice a week; and (b) in refusing to permit appellant to show that he was a married man, living with his family and supporting them; and (c) refusing to permit him to show that the prosecuting witness made no complaint about the check during a period of more than two years before the indictment was re-

turned; and (d) in refusing to permit appellant to show the date when the prosecuting witness appeared before the grand jury; and (e) in refusing to permit counsel for the appellant, when addressing the jury, to comment on certain testimony concerning a $200 transaction between the parties two months after the transaction in question; and (f) in giving undue emphasis in the charge to the jury to the fact that appellant had at a former time been convicted of crime; and (g) in limiting the introduction of testimony at the trial concerning the $200 transaction aforesaid; and (h) in commenting in the charge to the jury upon the reference made by appellant's counsel before the jury regarding the failure of the son of the prosecuting witness to appear as a witness in the case.

[1] We think that a single answer to each and all of the foregoing complaints is to be found in the bald fact that the so-called defense which was presented to the jury was, when correctly interpreted, an effectual confession of defendant's guilt under the indictment. In order to test the correctness of this statement the defendant's testimony must, of course, be accepted for the present as true in its full import, regardless of its contradiction by other evidence. in the case. The testimony of the defendant in brief was to the effect that he had obtained the sum of $75 from the prosecuting witness, and at the same time, in order to obtain the money, he gave to the prosecuting witness a check drawn to his order by defendant as of that date in the sum of $75, upon a bank in which the defendant had no credit nor account, as he then well knew. The defendant made no claim that the prosecuting witness, at the time of the transaction, knew of the worthless character of the check. These statements, if standing alone, would sustain the allegations of the indictment.

The defendant, however, testified in addition thereto, that both parties to the transaction understood at the time that the money was simply loaned for a period of three days by the prosecuting witness, and that the check was given merely as security therefor; the agreement being that it was to be held for three days, and that the defendant was then "to take it up." It is obvious that this statement does not constitute a valid defense to the indictment, for it was equally a violation of the statute for the defendant to obtain money from the prosecuting witness upon the faith of the worthless check, whether the check was to serve as security for a concurrent loan or was to be presented to the bank for payment in ordinary course. The testimony of the defendant, therefore, sustained his conviction, quite as unmistakably as did that of the prosecuting witness. It should be noted that the transaction as explained by the defendant, was not merely a promise made by him to repay the loan, but also the deposit of the check with the prosecuting witness as inducement and security therefor. It was the latter factor which transgressed the statute. In 19 Cyc. 396 et seq., it is stated under "False Pretenses":

"While the crime is not committed by a mere false promise, without a false statement of fact, a false statement of fact may become effective only by being coupled with a false promise. When this is the case, the statement of fact and the promise may be considered as together con-

stituting the false pretense, and a conviction may follow, or, if the statement of fact and the promise can be separated, and prosecutor relied in part on the former, the promise may be disregarded, and the defendant be convicted on the statement of fact. * * * Passing off a worthless check or draft, or a check which accused has no reason to suppose will be honored, comes within the above rule, for it is tantamount to a representation that accused has credit with the drawee to the amount of the paper."

[2] Consequently, according to the defendant's own testimony, the crime was complete when he obtained the money upon his promise secured by the check, and therefore the repayment of the money afterwards could amount to nothing more than mere reparation, and could not serve as a defense to the indictment. Carlisle v. State, 77 Ala. 71; People v. Moore, 48 Cal. App. 245, 191 Pac. 980, 982; People v. Khan, 41 Cal. App. 393, 182 Pac. 803.

[3] Nor was it a defense to show that the defendant at the time of the transaction intended to repay the money and thereby save the prosecuting witness from loss. Commonwealth v. Schwartz, 92 Ky. 510, 18 S. W. 775, 36 Am. St. Rep. 609; Commonwealth v. Coe, 115 Mass. 481, 502. In the latter case the court said:

"The intent to defraud is the intent, by the use of such false means, to induce another to part with his possession and confide it to the defendant, when he would not otherwise have done so. Neither the promise to repay, nor the intention to do so, will deprive the false and fraudulent act in obtaining it of its criminality. * * * The offense is complete when the property or money has been obtained by such means, and would not be purged by subsequent restoration or repayment."

The foregoing was cited with approval by this court in Robinson v. United States, 42 App. D. C. 186, 193.

Affirmed.