Willie **STEPNEY**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 80–1116.

District of Columbia Court of Appeals.

Argued Dec. 8, 1981.

Decided March 15, 1982.

Charles S. Carroccio, Jr., Washington, D. C., appointed by this court, for appellant.

Susan R. Holmes, Asst. U. S. Atty., with whom Charles F. C. Ruff, U. S. Atty., at the time the brief was filed, John A. Terry, Michael W. Farrell, and J. Ramsey Johnson, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and FERREN and PRYOR, Associate Judges.

PER CURIAM:

After a jury trial, appellant was convicted of forgery and uttering, D.C.Code 1973, § 22–1401, and attempted false pretenses, D.C.Code 1973, §§ 22–1301(a), –103. He received a sentence of two to six years imprisonment on each of the forgery and uttering counts, and one year for attempted false pretenses, all to run concurrently. The trial judge suspended execution of the sentences and placed appellant on three years' probation. In this court appellant challenges his convictions on the ground that there was insufficient evidence to support them. The government concedes this argument regarding the forgery and uttering convictions, which we therefore vacate. However, after careful consideration of the record, we find there was sufficient evidence of attempted false pretenses and affirm that conviction.

## I

For several months appellant had been receiving public assistance payments by mail from the District of Columbia. When he moved in February 1980 from a residence in Northwest Washington to another in Southeast, he did not receive his payment for March 1980. On March 4 he met with his case worker at the Department of Human Services (DHS). Upon being advised of appellant's problem, she requested a stop payment order on the original check and agreed to issue a duplicate check. Two days later appellant received the original check and cashed it at the Bloomingdale Community Center in Southeast Washington. When persons at the community center learned of the stop payment order on that check, they posted inside the cashier's window a photograph of appellant, taken at the time he cashed the original check. On March 11, a duplicate check was issued, which appellant picked up at DHS on March 20. At that time he signed a receipt for the check and a reimbursement agreement, which stated:

I, Willie Stepney certify that a substitute replacement check was requested because my original check was either not received, lost, stolen or destroyed. I also certify that the original check has not been received or cashed by me.

Upon acceptance of the substitute/replacement check, I agreed [*sic*] to the following: to promptly return the original check if it is received to the Office of Inspection, Room 118, 2146 Georgia Avenue, N.W., Washington, D. C. 20001, to reimbursed [*sic*] the Department of Human Resources the amount of overpayment in the event both checks are cashed by me.

Failure to report receipt of the original check may constitute a violation of Section 3–216(a) D.C.Code, 1973 and may result in criminal charges against you.

According to government testimony, appellant first read the reimbursement agreement in the presence of a DHS employee, who then explained it to him. He, in turn, responded that he understood it. Two days later, when appellant attempted to present the duplicate check at the community center, a cashier recognized him as the person in the photograph posted inside her window. The police were summoned and appellant was arrested.

Testifying in his own behalf, appellant admitted he cashed the original check but explained he thought it was an income tax refund check even though it was for the same amount as his missing disability check.

He acknowledged that a DHS employee had explained the reimbursement agreement after appellant had read it, and that he had understood it at the time he signed it. Nonetheless, at trial, he stated he was unable to explain its meaning.

## II

In reviewing appellant's conviction, we must determine whether there was sufficient evidence from which a reasonable juror could find guilt beyond a reasonable doubt. *Fox v. United States,* D.C.App., 421 A.2d 9, 13 (1980); *Curley v. United States,* 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). In doing so, we construe the evidence in the light most favorable to the government and without distinguishing between direct and circumstantial evidence. *See Jackson v. United States,* D.C.App., 395 A.2d 99, 102 (1978); *Byrd v. United States,* D.C.App., 388 A.2d 1225, 1229 (1978).

In this jurisdiction the crime of false pretenses[1] is committed when there is (1) a false representation, (2) knowledge of the falsity, (3) an intent to defraud, (4) reliance by the victim on the misrepresentation, and (5) the wrongdoer's receipt of something of value. *Clemons v. United States,* D.C.App., 400 A.2d 1048, 1050 (1979); *Lewis v. United States,* D.C.App., 389 A.2d 306, 309 (1978). "[T]he elements of the crime of attempted false pretenses, 'like other attempts to commit a crime, are an intent to commit it, the doing of some act towards its commission and the failure to consummate its commission. And it is not necessary in order to establish an intent that the potential victim was deceived and had parted with [something of value].'" *Marganella v. United States,* D.C.App., 268 A.2d 803, 804 (1970) (citations omitted).

This case offers three situations in which the government could have considered a charge involving false pretenses. The first occurred when appellant cashed the original check for which a stop payment order had been issued. *See Clemons v. United States, supra* at 1050. The second arose when appellant signed the reimbursement agreement in which he certified that he had not cashed the original check although he had in fact cashed that check two weeks previously. *Cf. Lewis v. United States, supra* (false pretenses conviction for fraudulent claims to Unemployment Compensation Board). The third is the one for which appellant was charged: his implied representation to the cashier at the community center that he was entitled to the proceeds of the duplicate check when, according to the terms of the reimbursement agreement, he was not entitled to a double payment.[2]

■ We think there was sufficient evidence from which a reasonable jury could properly find appellant guilty of attempted false pretenses arising from the third set of circumstances. Presentation of a check for payment is an implied representation of its validity and of appellant's ability to assign the right to present it for payment. *Clemons v. United States, supra* at 1050. Similarly, presentation of a check also implies a representation that the person seeking to cash it is entitled to receive the proceeds thereof. In light of the reimbursement agreement, appellant's representation to that effect was false since he had already cashed the original check.

In reviewing the evidence as to appellant's knowledge of his false representation and his intent to defraud, we find there was testimony that appellant read and understood the reimbursement agreement and had it explained to him. Nevertheless, he presented the duplicate check for payment, having previously cashed the original check

---

1. D.C.Code 1973, § 22–1301(a) reads, in pertinent part:

    Whoever, by any false pretense, with intent to defraud, obtains from any person ... anything of value ... shall, if the value ... of the money ... so obtained ... is $100 or upward, be imprisoned not less than one year.

2. In addition, appellant could have been prosecuted pursuant to D.C.Code 1973, § 3–216(a), as stated in the reimbursement agreement.

for the same amount.[3] Under these circumstances, a reasonable juror could find that appellant had knowledge of the falseness of his statement, as well as the necessary fraudulent intent. We therefore uphold the conviction for attempted false pretenses.

In upholding the attempted false pretenses conviction, but vacating the convictions for forgery and uttering, we must address the issue of sentencing. Absent the improper convictions for forgery and uttering, the sentencing judge might have imposed a lesser period of probation. *See Franklin v. United States,* D.C.App., 392 A.2d 516, 519 (1978), *cert. denied sub nom. Dickerson v. United States,* 440 U.S. 948, 99 S.Ct. 1428, 59 L.Ed.2d 637 (1979). Accordingly, we vacate the convictions of forgery and uttering, affirm the conviction of attempted false pretenses and remand the case for resentencing.

*So ordered.*

---

**3.** Had the cashier tendered money to appellant upon his presentation of the duplicate check, any reimbursement to the community center by the District of Columbia would have been immaterial to criminal liability for false pretenses. *See Clemons v. United States, supra* at 1050 n.2 (lack of pecuniary loss to store owner who cashed check for which payment had been stopped is no defense to criminal liability); *cf. Hymes v. United States,* D.C.App., 260 A.2d 679 (1970) (liability for unauthorized use of oil company credit card presented to service station attendants). "The gravamen of the crime is the obtaining of value through a false representation.... It is immaterial that a third party ... makes good the ... loss. The offense is not 'purged by subsequent ... repayment.'" *Gilmore v. United States,* 106 U.S.App.D.C. 344, 347–48, 273 F.2d 79, 82–83 (1959).